# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:04cv98

|  |  |  |
|---|---|---|
| VANCE CLIFFORD DALTON, and wife, KAY S. DALTON, | ) ) ) | |
| Plaintiffs, | ) ) | |
| Vs. | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| LARRY PIERSON, individually, and as a Henderson County Deputy Sheriff, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

THIS MATTER is before the court upon defendants' Motion for Partial Summary Judgment. Having carefully considered defendants' Motion for Partial Summary Judgment and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I.      Nature of the Case

Plaintiffs bring this matter in accordance with the provisions of 42, United States Code, Section 1983, contending that defendants used excessive force in effecting his arrest on the night of April 5, 2003. Plaintiffs have also brought supplemental claims, contending that defendants acts amounted to the false arrest as well as assault and battery of Vance Clifford Dalton, and resulted in a loss of consortium for Mrs. Dalton. Plaintiff's claim for injunctive relief against the Sheriff of Henderson County was earlier dismissed by the district court. This court has original jurisdiction over plaintiffs' Section 1983 claim and supplemental jurisdiction over their state-law claims.

Discovery has concluded and defendants have moved for partial summary judgment

on the issues of lawful entry onto plaintiffs' private property and the stop and pat down of Vance Clifford Dalton for weapons. Defendants have supported their motion with a memorandum of law and evidentiary materials; plaintiffs have timely responded with a brief, which includes affidavits and a transcript of a deposition; and defendants have filed a timely reply.[1] It appearing that all issues raised by the pending motion have been ably briefed, such motion is now ripe for entry of a recommendation to the district court.

## II. Factual Setting

The facts surrounding what occurred after defendant Deputy Larry Pierson attempted to pat down Vance Clifford Dalton for weapons on the night of April 5, 2003, are clearly in dispute and will require trial to resolve. What information the deputy sheriffs were provided when they were dispatched that night is not in dispute. Finally, whether or not Vance Clifford Dalton's brother, Dennis Dalton, actually committed the underlying offenses rather than Vance Clifford Dalton is not material to defendants' pending motion.[2]

Review of facts, therefore, will be limited to those pertinent to the qualified immunity inquiry. Defendants seek a declaration as to plaintiffs' allegations that they unlawfully entered plaintiffs' private property and unlawfully patted down Vance Clifford Dalton for weapons on April 5, 2003. Hereinafter Vance Clifford Dalton will be referred to as "plaintiff."

On that night, defendants Deputy Darrin Whitaker and Deputy Larry Pierson, and later

---

[1] Counsel for the respective parties have alleviated the concerns of the court in granting the proposed extension by not only timely filing their materials, but in submitting such materials well in advance of the deadlines. The undersigned greatly appreciates the fine manner in which respective counsel have, most professionally, moved this case to trial.

[2] Plaintiffs contend that defendants arrested the wrong man on the night of April 5, 2003, and that the person who was more than likely the one allegedly harassing their neighbor was plaintiff's brother, Mr. Dennis Dalton.

a non-party, Deputy Wayne McCarson, were dispatched based on a complaint received by the Henderson County Sheriff's Department from one of plaintiffs' neighbors. The neighbor complained that plaintiff was on their property threatening him and refusing to leave. Pierson Decl., at ¶¶ 2-3. The deputies patrol lieutenant, who was monitoring radio traffic, overheard the dispatch and warned the responding deputies that plaintiff was known to dislike law enforcement officers. Id. Based on such knowledge, another, third deputy was dispatched to the call. Id.

Each deputy proceeded to the call in their own police vehicle. They were informed over the radio that plaintiff was last seen traveling in a horse and buggy. While traveling on Little Creek Road, toward the home of the complainant on Sugar Loaf Mountain, the deputies came upon a man traveling in a mule and buggy. The man operating the rig had what appeared to the defendants to be a liquor jug between his knees. Defendant Pierson, believing that the man operating the rig was plaintiff and was intoxicated, got out of his car and informed the operator that they had received a call that he was bothering his neighbor and asked the man to continue on home. The man operating the rig glared at Defendant Pierson in what he perceived to be displeasure at his presence, but continued on his way as instructed. Pierson Decl., at ¶ 3.

After the mule and buggy encounter, the deputies proceeded to the home of the complainant, Mr. Fralick. Mr. Fralick told Defendant Pierson that plaintiff had been in the complainant's yard threatening him and his house guests, stating that he was going to kick them off the mountain, and refusing to leave. After being informed by the complainant about what occurred, Defendant Pierson advised the complainant of his right to seek warrants at the county magistrate's office and to call the Sheriff again if plaintiff returned. Pierson Decl., at ¶ 4.

After such discussion ended, the deputies went back down Sugar Loaf Mountain and again encountered the same person they encountered on the way up, only this time he was operating an ATV.[3]  When Defendant Pierson again encountered the plaintiff, he told him to keep going and not to bother his neighbor anymore.  Defendant Pierson avers that the plaintiff again responded by glaring at him and continued on his way.  Pierson Decl., at 5.

After the second encounter, Defendant McCarson drove on and left the area. Defendants Pierson and Whitaker stopped to speak to a female motorist to ask her if she knew where Little Creek Road turned from a public into a private road.  According to Defendant Pierson, their inquiry was based on a concern that the person operating the ATV was intoxicated and operating the vehicle on a public vehicular area.  During this conversation, the defendants learned that the woman was the wife of a Hendersonville police officer Leon Worthy.  When Mrs. Worthy learned that the officers had been dispatched on a complaint concerning plaintiff, she warned them to be careful because he was known to carry a pistol in his right front pocket.  Pierson Aff., ¶ 5; Plaintiff's Response, at 4.

After talking with Mrs. Worthy, Defendants Pierson and Whitaker continued down the mountain.  They soon received a new call from dispatch, directing them to return to the home of Mr. Fralick, because the plaintiff was purportedly again in the Fralick's, this time on an ATV, causing another disturbance.  Deputies Pierson and Whitaker turned their cars around, and as they proceeded up Sugar Loaf Mountain they again encountered plaintiff proceeding towards them on his ATV.  Defendant Pierson stopped his patrol car and approached plaintiff, who had dismounted the ATV.  Defendant Pierson averred that his intent at that point was to question plaintiff as to why he was harassing his neighbors. Defendant Pierson avers that his first priority was to pat down plaintiff for weapons, given

---

[3]        An "ATV" is an all terrain vehicle, also known as a four wheeler.

what he had been told that evening concerning plaintiff's acts, propensities, his reputation for carrying a concealed weapon, and his observations as to plaintiff's intoxication and his large size. Pierson Decl., at ¶ 6. As he approached, Defendant Pierson also avers that he carried his can of pepper spray as a precaution. Defendant Pierson avers that when he approached plaintiff, he announced that he needed to pat plaintiff down for weapons. Id., at 6 &7.

What happened next is disputed, but is not material to the limited inquiry presented to the undersigned concerning allegations of wrongful entry on plaintiffs' property and an unlawful stop and frisk for weapons. To aid in providing reviewing courts a more comprehensive picture, the undersigned will briefly summarize what each side contends happened next.[4] Plaintiff avers that Defendant Pierson, without warning or provocation, and without indicating to him in any manner that he was a law enforcement officer, pepper sprayed him. Defendant Pierson avers that as he reached for plaintiff's overalls with his right hand, plaintiff shoved him, throwing him off balance, and that such attack required him to use the pepper spray to subdue plaintiff.

Defendants contend and aver that both officers then placed plaintiff in handcuffs, took him to a local fire station to wash off the pepper spray (which plaintiff purportedly refused), and then took him to the county jail and requested the issuance of a warrant from a state magistrate charging him with assault on a government official. Plaintiff has a different version of events, averring that he was beaten and kicked by the deputies and that upon arrival at the jail plaintiff was denied medical attention.

Plaintiffs contend that the charges of assault on a government officer were trumped

---

[4]    These contentions have not been considered by the undersigned in conducting the instant analysis.

up by the defendants. Plaintiffs claims of excessive force are not subject to the motion for summary judgment, and defendants have conceded that such claims will have to be resolved at trial. See Defendants' Brief in Support, at 4.

## II.    Standard Applicable to a Motion for Partial Summary Judgment

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of defendants' Motion for Summary Judgment are to be used to determine whether issues of fact exist, not

**6**

to decide the issues themselves.  <u>United States ex rel. Jones v. Rundle</u>, 453 F.2d 147 (3d Cir. 1971).  When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper.  <u>Davis v. Zahradnick</u>, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her  favor.  <u>Anderson</u>, <u>supra</u>, at 255.  In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law."  <u>Id.</u>, at 252.  In the context of a civil claim for violation of the fourth amendment of the United States Constitution, the plaintiff carries the burden of proving that the challenged conduct violated the Constitution.  <u>See</u> <u>Brown v. Gilmore</u>, 278 F.3d 362, 367 (4th Cir. 2002).

## IV.    Motion for Partial Summary Judgment

### A.    Unlawful Entry Onto Land

For the limited purpose of the pending motion, the undersigned has accepted as true the allegations of the Complaint.  At paragraph 19 of the Amended Complaint, plaintiffs allege that

> [b]y entering onto his property without any lawful cause, armed and driving recklessly and dangerously, [the deputies] violated his constitutionally protected rights to privacy.

Amended Complaint, at ¶ 19.  Earlier in their Amended Complaint, plaintiffs alleged that plaintiff was confronted by the deputies as he was searching about his "private property" for missing cattle.  <u>Id.</u>, at ¶¶ 6-7.  Construing all such allegations in a light most favorable to plaintiffs, it appears that he is alleging that defendants confronted him on his private property constituting pastures and private roads.

The fourth amendment prohibition against unreasonable searches protects only those areas

in which a person has an expectation of privacy that society considers reasonable. United States v. Jacobsen, 466 U.S. 109, 113 (1984). As a matter of well settled law, a law enforcement officer may enter into and upon "open fields" without violating the landowner's fourth amendment rights, because the fourth amendment requires neither a warrant nor probable cause for the police to enter and search an unoccupied or undeveloped area outside the curtilage of a home. Oliver v. United States, 466 U.S. 170 (1984); Dow Chem. Co. v. United States, 476 U.S. 227 (1986) (enclosed manufacturing complex falls somewhere between "open fields" and curtilage); United States v. Ramapuram, 632 F.2d 1149 (4th Cir. 1980) (no reasonable expectation of privacy in junker car left in open field), cert. denied, 450 U.S. 1030 (1981).

It is well settled in the Fourth Circuit that a police officer may go so far as to enter a person's land, walk up to the steps of his home with the honest intent of asking questions, knock on the door, and ask the occupant questions without raising any "right to privacy" concerns. United States v. Cephas, 254 F.3d 488, 493 (4th Cir. 2001).

The burden is on the plaintiff in a civil case to prove the existence of a reasonable expectation of privacy. Rawlings v. Kentucky, 448 U.S. 98 (1980); Rakas v. Illinois, 439 U.S. 128 (1978). Under prevailing case law, neither the allegations of plaintiffs' complaint nor the evidence presented in response to defendants' motion satisfies that burden. The undersigned will, therefore, respectfully recommend to the district court that summary judgment be granted in favor of defendants on the issue of whether they violated plaintiffs' right to privacy by entering upon their private property.

### B. Unlawful Stop and Pat Down

Defendants have also moved for summary judgment on the issue of whether the stop and pat down of Plaintiff was lawful. Plaintiffs allege that Defendants Whitaker and Pierson had

> no lawful cause to detain or question the plaintiff and no lawful cause to
> search him or his property or to pat him down for weapons if a 'patdown'

search was the pretext for their initial assault on him.

Amended Complaint, at ¶ 19.

The police, of course, have no right to stop and frisk whoever they want. If an officer has a reasonable, articulable suspicion that criminal activity is afoot- - that is, that the person to be stopped has just committed or is about to commit a crime - - the officer may stop the person and, if he reasonably fears the person is armed and dangerous, he may conduct a frisk for weapons. Terry v. Ohio, 392 U.S. 1 (1968). Further, in the course of an investigation, an officer may frisk any person whom the officer encounters and reasonably believes to be carrying a weapon, regardless of whether probable cause exists to arrest such person. Id., at 27. For purposes of clarity, the undersigned will first determine whether the stop was lawful and then determine whether the frisk for weapons was lawful.

### 1.     The Lawfulness of the Stop

As to the stop of plaintiff, a reasonable suspicion requires some minimal level of objective justification for the stop, which is more than an inchoate and unparticularized "hunch," but less than the level of suspicion required for probable cause. United States v. Sokolow, 490 U.S. 1 (1989). A totality of the circumstances test is used to determine the existence of a reasonable suspicion of criminal conduct that will justify the stop. Id. Factors to be consider in measuring the reasonableness of a stop include:

(1)     the area's disposition toward criminal activity, United States v. Moore, 817 F.2d 1105 (4th Cir.), cert. denied, 484 U.S. 965 (1987) ;

(2)     the suspects lone presence in an area where crime has purportedly just occurred, id.;

(3)     the similarity of the vehicle used by the suspect to that suspected of use in the purported criminal activity, United States v. Cortez, 449 U.S. 411 (1981);

(4)     the time of the stop;

(5)     any suspicious conduct of the suspect in light of the officer's experience or training, United States v. Turner, 933 F.2d 240, 244 (4th Cir. 1991);

(6)     the knowledge of other officers involved in the investigation, including radio reports from police headquarters, United States v. Moore, 817 F.2d 1105 (4th Cir.), cert. denied, 484 U.S. 965 (1987); and

(7)     an informant's tip that has either been corroborated or is provided by a trustworthy source, Alabama v. White, 496 U.S. 325 (1990).

Whether or not plaintiff actually committed the offenses of which he was suspected is not relevant to this inquiry, because hindsight has no role in determining whether a reasonable suspicion existed at the time of the encounter. Leverette v. Bell, 247 F.3d 160, 168 n.5 (4th Cir. 2001). Even where an arrest occurs, the fourth amendment simply is not violated where the wrong person is arrested, so long as the arrest is based on probable cause. Mensh v. Dyer, 956 F.2d 36, 39 (4th Cir. 1991). Plaintiffs' affidavits, therefore, have no bearing on this inquiry, because it is the perception of the responding officers on the night in question that is the key to the reasonableness of the stop and subsequent frisk.

When all the circumstances confronting the deputies on the night of April 5, 2003, are viewed together, it is clear that the officers had a reasonable, articulable suspicion that criminal activity was afoot, and that plaintiff had just committed several crimes. Indeed, the circumstances were overwhelming - - the original radio report from dispatch; the alleged encounter with plaintiff on the way up the mountain; the corroboration of the initial report through interviewing the complainant; the alleged encounter with plaintiff on the deputies' way back down, when plaintiff was on an ATV on his way back up, toward the complainant's home; the second report of plaintiff again threatening the complainant, this

**10**

time on an ATV, which was consistent with the deputies earlier observation and radio call; and the third encounter with plaintiff, who was on his way back down, by the deputies who were on their way back up for the second time that night. Based on the totality of the circumstances, not only was the Terry stop of plaintiff reasonable, the deputies would have been derelict in their duties or simply incompetent had they failed to stop him. Terry, supra.

As a matter of well settled law, the Terry stop was supported by a reasonable, articulable suspicion, and was therefore lawful. The undersigned will respectfully recommend to the district court that this issue be resolved in favor of defendants and that summary judgment be granted to them on the issue of the lawfulness of the stop of plaintiff.

## 2. The Lawfulness of the Pat Down for Weapons

Once an officer has properly stopped an individual, or if an officer reasonably fears that a person is armed during an investigation, Terry, supra, the officer may conduct a limited search of the person's clothing "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer" if the officer reasonably fears that the person detained may be armed and dangerous. Terry, supra, at 29. Such a search is limited to weapons, and a simple suspicion that a defendant may be in possession of contraband will not justify a search. Ybarra v. Illinois, 444 U.S. 85 (1979).

In this matter, defendants have clearly shown not only a reasonable, articulable suspicion to stop plaintiff based on a suspicion of recent criminal conduct, they have shown that they had a reason to fear that he was armed and a danger to their personal safety inasmuch as the officers had reason to believe he was intoxicated, upset, disliked police, and was known, based on information received from a citizen who was the spouse of a law enforcement officer known to defendants, to arm himself by placing a pistol in his pocket. Indeed, the citizen even knew the exact pocket where the plaintiff was reputed to carry his

pistol (the right pocket). Pierson Aff., at ¶ 6. A person who is on his or her own land, or has a carry permit, may not be committing a criminal act when carrying a concealed weapon in North Carolina, but such a person enjoys no additional protection under Terry or immunity from a weapons pat down. To require otherwise would be to impose upon an officer a duty of inquiry as to property ownership and permits, questioning which, as the Court of Appeals for the Seventh Circuit observed, would create serious issues of public safety:

> if at the time of the stop a police officer has reasonable suspicion that an individual is armed and dangerous, he or she may immediately frisk the suspect. It is not necessary for the police officer to ask a question first and possibly "take the risk that the answer might be a bullet."

United States v. Wheeler, 800 F.2d 100, 104 (7ᵗʰ Cir. 1986)(citation omitted; quoting Adams v. Williams, 407 U.S. 143 (1972)(Harlan, J., concurring)), rev'd on other grounds, United States v. Sblendorio, 830 F.2d 1382 (7ᵗʰ Cir. 1987). The reasonableness of a weapons frisk does not turn on whether the weapon was lawfully possessed, but on officer safety inasmuch as an officer must be free to conduct an "investigation without fear of violence." Adams, at 146. Based on Defendant Pierson's first hand observations as well as what he learned in the course of his investigation, the weapons pat down of plaintiff for weapons fully complied with Terry and its progeny. The undersigned will, therefore, respectfully recommend to the district court that defendants' Motion for Partial Summary Judgment be granted on the issue of the lawfulness of the weapons pat down of plaintiff, Vance Clifford Dalton.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants' Motion for Partial Summary Judgment be **ALLOWED**, and that **PARTIAL SUMMARY JUDGMENT** be entered in favor of defendants on the issues of unlawful entry onto land and unlawful stop and frisk.

**IT FURTHER APPEARING** that no other dispositive issues remain for resolution prior to trial, that this matter be placed on the district court's July 2005 civil trial term for disposition, all in accordance with the Pretrial Order.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

**Signed: May 16, 2005**

Dennis L. Howell
United States Magistrate Judge